UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MARCO D. DUNCAN,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-1032 (GK) |
| ) | |
| **DRUG ENFORCEMENT ADMIN. &** ) | |
| **U.S. MARSHALS SERVICE**, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Drug Enforcement Administration (DEA) and the U.S. Marshals Service

(USMS) request that the Court enter summary judgment against Plaintiff pursuant to Fed. R. Civ.

P. 56 because there is no genuine issue as to any material fact and Defendants are entitled to

judgment as a matter of law in this Freedom of Information Act (FOIA), 5 U.S.C. § 552, case.

Attached is a memorandum of points and authorities, with exhibits, and a proposed order.

Plaintiff should take notice that any factual assertions contained in the declarations and

other attachments in support of the Defendants' motion will be accepted by the Court as true

unless Plaintiff submits his own affidavit or other documentary evidence contradicting the

assertions in the Defendants' materials.  See Neal v. Kelly, 963 F.2d 453 (D.C. Cir. 1992), Local

Rule 7(h) and Fed. R. Civ. P. 56(e), which provides as follows:

> Supporting and opposing affidavits shall be made on personal knowledge, shall
> set forth such facts as would be admissible in evidence, and shall show
> affirmatively that the affiant is competent to testify to the matters stated therein.
> Sworn or certified copies of all papers or parts thereof referred to in an affidavit
> shall be attached thereto or served therewith.  The court may permit affidavits to
> be supplemented or opposed by depositions, answers to interrogatories, or further
> affidavits.  When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere allegations or
> denials of the adverse party's pleading, but the adverse party's response, by

affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney

_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office, Civil Division
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**MARCO D. DUNCAN,**　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　v.　　　　　　　　　　　　)　　　Civil Action No. 06-1032 (GK)
　　　　　　　　　　　　　　　　　　　　)
**DRUG ENFORCEMENT ADMIN. &**　)
**U.S. MARSHALS SERVICE**,　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　　　　Defendants.　　　)

**DEFENDANTS' LCvR 7(h) STATEMENT OF MATERIAL FACTS
WITH RESPECT TO WHICH THERE IS NO GENUINE ISSUE**

In connection with the submission of Defendants' Motion for Summary Judgment, and

pursuant to LCvR 7(h) and 56.1, Defendants respectfully submit the following statement of

material facts as to which there is no genuine dispute:

**DEA'S PROCESSING OF PLAINTIFF'S FOIA/PA REQUEST**

1.　　　By letter dated July 14, 2004, Plaintiff requested: (1) any and all DEA Forms 6,

inventory lists, related arrest reports, and all information and a list of evidence seized by

several Special Agents and a Deputy U.S. Marshal in regards to his arrest on April 21,

2003; and (2) any and all information regarding any "video surveillance seized from the

El Dorado Hotel Security by this agency or any agency" in conjunction with his arrest.

Exhibit A to the Wassom Decl. (attached as Ex. 2).

2.　　　By letter dated July 22, 2004, DEA acknowledged Plaintiff's request and assigned it

DEA FOIA Request No. 04-1519-P.　Wassom Decl., Exhibit B.

3.　　　By letter dated August 11, 2004, DEA released portions of 29 pages to Plaintiff.

Twelve pages were withheld in their entirety.　Information was withheld pursuant to

FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and section (j)(2) of the Privacy Act. Wassom Decl., Exhibit C.

4. Pursuant to a litigation review, by letter dated September 18, 2006, a supplemental release was made to Plaintiff, which included portions of two (2) pages, numbered 13 and 23, that previously were withheld in their entirety, and a single page, numbered 41. Wassom Decl., Exhibit D.

5. By letter dated September 18, 2006, DEA made a second supplemental release to Plaintiff. That release included portions of a single page, numbered 24. Wassom Decl., Exhibit E.

6. There is no record that Plaintiff appealed the initial DEA action to the Department of Justice, Office of Information and Privacy (OIP). Wassom Decl. at ¶ 6.

### DEA FOIA Request No. 05-1295-P

7. By letter dated July 5, 2005, Plaintiff requested "any and all materials for the entire central file that [DEA] and any other agencies under your supervision, as may be referred to below, has compiled to date relating to me. . . ." Wassom Decl., Ex. F.

8. By letter dated July 28, 2005, DEA acknowledged the request and assigned it DEA FOIA Request No. 05-1295-P. Wassom Decl., Exhibit G.

9. By letter dated September 8, 2005, DEA informed Plaintiff that his request 04-1519-P was previously processed and no further information was available. Wassom Decl., Exhibit H.

10. By letter dated October 17, 2005, Plaintiff appealed DEA's response to OIP, requesting his entire file and a *Vaughn* index. Wassom Decl., Exhibit I.

11.  By letter dated October 28, 2005, OIP acknowledged Plaintiff's appeal and informed him that it would be handled in approximate order of receipt.  Wassom Decl., Exhibit J.

12.  By letter dated March 8, 2006, OIP affirmed the DEA response. Wassom Decl., Exhibit K.

## DEA FOIA Request No. 06-0114-P

13.  By letter dated October 24, 2005, the United States Marshals Service (USMS) forwarded three pages to DEA for review and direct response to the requester and a copy of the plaintiff's request to USMS.  Wassom Decl., Exhibit L.

14.  By letter dated November 15, 2005, DEA informed Plaintiff that it been asked by USMS to review certain materials that originated within DEA, the request was assigned DEA FOIA Request No. 06-0114-P, and that the materials would be processed in chronological order based on the date of its letter.  Wassom Decl., Exhibit M.

15.  By letter dated December 15, 2005, DEA released portions of three (3) pages to the plaintiff.  Information was withheld pursuant to FOIA exemptions (b)(2) and (b)(7)(C).  Wassom Decl., Exhibit N.

## DEA FOIA Request No. 06-0375-P

16.  By letter dated December 19, 2005, the USMS referred eight (8) pages to DEA for review and direct response to the requester, along with a copy of Plaintiff's request.  The USMS informed DEA that it was withholding names of USMS employees and third parties pursuant to FOIA exemption (b)(7)(C).  Wassom Decl., Exhibit O.

17.  By letter dated January 5, 2006, DEA informed Plaintiff that it been asked by USMS to review certain materials that originated within DEA, that the referral was assigned

DEA FOIA Request No. 06-0375-P, and that the materials would be processed in chronological order based on the date of its letter.  Wassom Decl., Exhibit P.

18.    By letter dated March 1, 2006, DEA returned seven (7) of the eight (8) referred pages to USMS for direct response to the requester, stating that the seven pages originated within USMS.  DEA indicated that it was withholding information pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(D) on five of the seven pages.  Wassom Decl., Exhibit Q.

19.    By letter dated March 1, 2006,  DEA released portions of one (1) page to Plaintiff. Information was withheld pursuant to FOIA exemptions (b)(2) and (b)(7)(C) and section (j)(2) of the Privacy Act.  DEA informed Plaintiff that the remaining seven (7) pages referred had been referred to another agency, and that agency would respond to him. Wassom Decl., Exhibit R.

## ADEQUACY OF DEA's SEARCH
## DEA FOIA Request No. 04-1519-P and 05-1295-P

20.    DEA interpreted Requests 04-1519 and 05-1295 as requests for criminal investigative information.  All criminal investigative information about Plaintiff maintained by DEA was reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  No other system of records maintained by DEA was reasonably likely to contain investigative information about Plaintiff.  Wassom Decl. at ¶ 25.

21.    IRFS is a DEA Privacy Act System of Records that contains <u>all</u> administrative, general and investigative files compiled by DEA for law enforcement purposes.  Therefore, no other records system within DEA is reasonably likely to contain investigation information

responsive to Plaintiff's request.  Wassom Decl. at ¶ 26.

22.    The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to,

and the practical means by which, DEA retrieves investigative reports and information

from IRFS.  As an index, NADDIS points to investigative files and particular DEA

Reports of Investigation (ROI), DEA Form-6, or other documents that contain

information regarding a particular individual or subject of an investigation.  Individuals

are indexed and identified in NADDIS by their name, Social Security Number, and/or

date of birth.  Wassom Decl. at ¶ 27.

23.    In response to Plaintiff's request assigned DEA FOIA Request No. 04-1519,  a NADDIS

query was conducted by SARO, on July  21, 2004.  The search was conducted by a SARO

pre-processor, who used Plaintiff's name, Social Security Number, and date of birth.  As

a result of the NADDIS query, a single investigative file was identified and retrieved.  A

search of the file resulted in locating 41 pages of responsive material.  Wassom Decl. at ¶

28.

24.    In response to Plaintiff's request assigned DEA FOIA Request No. 05-1295, a NADDIS

query was conducted on August 26, 2005.  No additions to the investigative case file in

which Plaintiff was mentioned were observed.   Wassom Decl. at ¶ 29.

25.    During the course of the litigation review, the results of the NADDIS queries conducted

by SARO on August 26, 2005, in response to Plaintiff's request assigned DEA FOIA

Request No. 05-1295, were compared with the results of the query conducted on July  21,

2004, in response to Plaintiff's request assigned DEA FOIA Request No. 04-1519.  The

comparison revealed that an additional DEA Report of Investigation, consisting of two

(2) pages, prepared on February 22, 2004, existed at the time the search was conducted in response to DEA FOIA Request No. 05-1295. Thus, a total of 43 pages of responsive materials were identified by DEA. Wassom Decl. at ¶ 30.

26. The investigative report was obtained and processed. By letter dated September 28, 2006, DEA released portions of two (2) pages to Plaintiff. Information was withheld pursuant to PA Exemption (j)(2) and FOIA Exemptions (b)(2), (b)(7)(C) and (b)(7)(F). Wassom Decl., Exhibit S.

27. DEA released to Plaintiff nonexempt portions of the ROI, prepared on April 22, 2003, detailing the arrest of Plaintiff by letter dated August 11, 2004. Included in the release to Plaintiff were the nonexempt portions of two (2) DEA Form 7a(s), Acquisition of Non-Drug Property and Regulatory Seizures, which detailed the three (3) non-drug exhibits seized at the time of Plaintiff's arrest. Wassom Decl. at ¶ 31.

28. With regard to Plaintiff's request for video surveillance, DEA searched its Investigative File No. KV-01-0014. There is no record of the existence of any video surveillance, or the recording of any surveillance by DEA in the case file. Wassom Decl. at ¶ 33.

29. A total of 54 pages of responsive material were reviewed and DEA located 43 pages of materials as a result of searches conducted in response to the direct requests from the plaintiff. The USMS referred a total of 11 pages to DEA for review and release to the plaintiff. Of the 11 pages referred by USMS, portions of four (4) pages were released to Plaintiff and (7) pages were returned to USMS for final processing. In total, DEA released portions of 37 pages and withheld 10 in their entirety. Wassom Decl. at ¶ 34.

30. The 54 pages of responsive information reviewed by DEA consisted of: 18 DEA ROIs;

three (3) USMS Form 11, Report of Investigation; six (6) DEA Personal History Reports;

one (1) DEA Defendant Disposition Report; two (2) DEA Acquisition of Non-Drug

Property and Regulatory Seizures; one (1) memorandum; one (1) Fugitives Search

Results; three (3) USMS e-mails; and three (3) pages of USMS computer printouts. DEA

Decl. at ¶ 35.

31.    The 43 pages located by DEA and one (1) page referred by USMS were material

maintained in DEA investigative case files. Wassom Decl. at ¶ 36.

32.    DEA investigative case files are established by the office commencing an investigation.

The files are titled according to the name of the principal suspect violator or entity

known to DEA at the time the file is opened. DEA does not maintain separate dossier

investigative case files on every individual or entity that is of investigative interest. DEA

Decl. at ¶ 36.

33.    Information gathered during the course of a DEA investigation is systematically gathered

and included in the investigative case file. This information relates to the file subject and

may also include other individuals, such as those who are suspected of engaging in

criminal activity in association with the subject of the file. Wassom Decl. at ¶ 37.

34.    Investigative case files maintained in IRFS contain several records that include, in

pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation

page, Form 6a, (2) the DEA Personal History Report, DEA Form 202, (3) the DEA

Defendant Disposition Report, and other documents that may serve as a substitute for the

forms. Wassom Decl. at ¶ 38.

35.    The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI.

The forms are used by DEA to memorialize investigative and intelligence activities, and information.  The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks.  Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom.  The middle of the page is the narrative section in which investigative and intelligence information is recorded.  Wassom Decl. at ¶ 39.

36.     The DEA Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section, in which investigative and intelligence information is recorded, that extends to the bottom of the page.  Wassom Decl. at ¶ 40.

37.     The DEA Form 6, Block 4, and DEA Form 6a, Block 2, contain a G-DEP identifier.  The DEA Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel.  The DEA Form 6, Block 6, and DEA Form 6a, Block 3, contain the file title, which is generally the subject of the investigation.  Wassom Decl. at ¶ 41.

38.     The narrative may be broken into several sections which include a "Synopsis," "Details," "Evidence," and/or "Indexing" sections.  The "Synopsis" and "Details" sections document events that often contain names of third parties and law enforcement personnel, and information about individuals.  The "Evidence" section is used to document and note the collection of evidence and the disposal of items.  Wassom Decl. at ¶ 42.

39.     Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS.  In addition to

the name of an individual, the indexing section may provide identifying details for the

indexed individuals or entity that may include physical descriptions, aliases, social

security numbers, various license numbers, addresses, and/or occupations.  Wassom Decl.

at ¶ 43.

40.     The DEA Personal History Report, DEA Form 202,  is a two-page multi-block form used

(1) to identify and classify an individual, or update an earlier identification or

classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a

defendant a fugitive, (3) as part of the establishment of a cooperating individual, and (4)

to correct personal data in the NADDIS index.  Wassom Decl. at ¶ 44.

41.     The 6-01 version of the DEA form, utilized in this case, consists of 76 blocks that are

completed depending on the circumstances.  Block 1 contains the file title, which is

generally the subject of the investigation.  Block 5 contains a G-DEP identifier; blocks

68, 69, 71, 72, 74, and 75 normally contain the names and/or signatures of DEA Special

Agents and other law enforcement personnel.  Blocks 8 through 57 contain identifying

information about the individual to whom the form pertains.  Blocks 42 through 67

contain information related to and explaining the action being taken.  Wassom Decl. at ¶

45.

42.     DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as

the source document for the compilation of DEA defendant statistics, as well as the

means by which DEA and the Federal Bureau of Investigation (FBI) track individual

cases brought against DEA defendants.  A separate DEA Form 210 is prepared for each

defendant prosecuted as the result of DEA investigative efforts.  The DEA Form consists

of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16-20, personal information and identifiers of the defendant; and Blocks 24 and 25, the names and signatures of a DEA Special Agent and/or other law enforcement officers. Wassom Decl. at ¶ 46.

43.    The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to report any non-drug property acquired. DEA uses the DEA-Form 7a to log or maintain a record of the non-drug property. The form consists of 31 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; and Blocks 13 -18, 20, 21, 28 and 30, the names and signature of a DEA Special Agent or other law enforcement officer. Wassom Decl. at ¶ 47.

44.    The exemptions utilized by DEA to withhold material were the Privacy Act, 5 U.S.C. § 552a, Exemption (j)(2), and the Freedom of Information Act, 5 U.S.C. § 552, Exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). Wassom Decl. at ¶ 48 and Ex. T.

45.    The information responsive to plaintiff's requests that were reviewed by DEA is criminal investigatory data compiled for law enforcement purposes. The information was collected pursuant to DEA's law enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, and placed into DEA investigative case files that are maintained in IRFS. Wassom Decl. at ¶ 49.

46.    As a Privacy Act System of Records, the Attorney General promulgated rules, in accordance with the Act, exempting IRFS from the access provisions, pursuant to 5

U.S.C. § 552a(j)(2).  *See* 28 C.F.R. § 16.98 (2005).  The system was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.  Wassom Decl. at ¶ 50.

47.    No routine use exists for release of information to Plaintiff; no court order was received by DEA directing the release of records to Plaintiff; and, no third-party release authorization was provided.  Therefore, except information that  pertains to the Plaintiff,  DEA withheld information, unless release was required by the FOIA.  DEA Decl. at ¶ 52.

## SEGREGABILITY

48.    All of the responsive information was examined to determine whether any reasonably segregable information could be released.  Wassom Decl. at ¶ 76.

49.    Pages were withheld in their entirety where, based upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of  information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.  Wassom Decl. at ¶ 76.

50.   Pages "4" and "5", "6" and "7", and "8" and "9" comprise three (3) Personal History
      Reports, DEA Form 202, of three (3) third-parties.  The pages are withheld in their
      entirety pursuant to FOIA exemptions (b)(2),  (b)(7)(C), and,  (b)(7)(F).  The reports
      contain identifying and investigative information about the third-parties.  Plaintiff's
      name is mentioned only as a criminal associate of the third-party about whom the record
      pertains.  After redacting all withholdable information, no useful information would
      remain, except for Plaintiff's name on the first page of the reports.  Wassom Decl. at ¶ 80.

51.   Page "26" is the second page of a  two-page ROI containing information provided by a
      confidential source regarding Plaintiff and a third-party.  The page was withheld in its
      entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F).  The
      information about Plaintiff is inextricably intertwined with information about the third
      party.  After redacting all withholdable information, no useful information would remain,
      except for Plaintiff's name in the indexing section.  Thus, the page was withheld in its
      entirety.  Wassom Decl. at ¶ 81.

52.   Pages "35", "37" and "39" are the second page of three (3) two-page ROIs regarding the
      pleas of three (3) third-parties and is the continuation of the indexing section of the
      reports.  The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2) and
      (b)(7)(C).  Plaintiff's name is not mentioned on the pages.  After redacting the
      withholdable information, no useful information would remain.  Thus, the page was
      withheld in its entirety.  Wassom Decl. at ¶ 82.

                   **THE USMS' PROCESSING OF PLAINTIFF'S FOIA/PA REQUEST**

53.   Plaintiff submitted a request to the USMS Headquarters, dated July 14, 2005,

seeking information pertaining to himself and seized assets, and referenced file numbers, DEA File No. KV-01-0014 and 3:02CR20-RV. Bordley Decl. (attached as Ex. 1), Exhibit A.

54.    In accordance with USMS procedures for processing FOIA/PA requests for information on individuals and seized assets, the USMS processed the request as two separate requests, i.e., one for information on Plaintiff and assigned Request Number 2005USMS8601, and one for information on seized assets and assigned Request Number 2005USMS8588. Bordley Decl. at ¶ 3.

55.    By letters dated July 28, 2005 (Request No. 2005USMS8601) and August 1, 2005 (Request No. 2005USMS8588), respectively, the USMS advised Plaintiff that his request was received and that it had commenced a search for records. Bordley Decl., Exhibits B and B-1.

56.    The USMS conducted a search for records on Plaintiff, by his name and/or personal identifier, pursuant to his request, in the USMS offices he identified, i.e., the Northern District of Florida and the District of Nevada. The USMS extended its search to other district offices that were subsequently determined to have records on Plaintiff: the Eastern and Northern Districts of California. The USMS searched in all locations that could reasonably be expected to contain responsive records. Bordley Decl. at ¶ 5.

57.    The USMS systems of records routinely encompassed by a search for prisoner records is the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007. These systems of records are searched by an individual's name

and/or personal identifier. Bordley Decl. at ¶ 6.

58.    Documents pertaining to Plaintiff were located in the PPM/PTS and WIN systems of records. These systems assist the USMS in carrying out its statutory law enforcement responsibilities related to receiving, processing, transporting, and maintaining custody of federal prisoners from the time of their arrest by a U.S. Marshal or their remand to a U.S. Marshal by the court until the prisoner is committed by the court to the Attorney General for service of sentence, otherwise released from custody or returned to custody of the U.S. Parole Commission or Bureau of Prisons, the execution of Federal arrest warrants, and the investigation of fugitive matters. See Rule 4, Federal Rules of Criminal Procedure, 18 U.S.C. § 4086, 28 U.S.C. § 566, and 28 C.F.R. § 0.111(a), (e), (j), (k), (q). As such, these systems of records are exempt from the access provision of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2). See 28 C.F.R § 16.101(a), (g), (q). Bordley Decl. at ¶ 6.

59.    To ensure maximum access, Plaintiff's records were processed for disclosure pursuant to the Freedom of Information Act, 5 U.S.C. § 552. As a result of the search of these systems of records by Plaintiff's name and/or personal identifier, 256 pages of material relating to Plaintiff were located in these district offices. No additional records concerning Plaintiff were located. Id.

60.    The USMS conducted a search for records on seized assets in the USMS Headquarter's Asset Forfeiture Office (AFO). Seized asset information is maintained in the Department of Justice (DOJ) Consolidated Asset Tracking System (CATS), the automated database for seized and forfeited property. The CATS database is a single integrated asset

forfeiture information system for use by DOJ components and other federal agencies for law enforcement associated with civil and criminal forfeiture of assets. This database includes information identifying the asset location and identification number, name and address of owner and other parties having a lien or interest, names of seizing agencies, probable cause for seizure and the statutory basis for the action, disposal decision, and other information. Information maintained in the CATS database is primarily retrieved by a CATS identification number, occasionally by a civil action case number, a property description or identification number, and in rare instances, under an individual's name. Bordley Decl. at ¶ 7.

61.  As a result of the search of this system by the civil case number and agency case number, ten (10) pages of material pertaining to seized assets was located. No additional responsive documents were located. Id.

62.  By letter dated October 21, 2005 (Request No. 2005USMS8588), the USMS responded to Plaintiff's request, informing him that after conducting a search of its files, 10 pages of seized asset information had been located which were responsive to his request. Of this material, three (3) pages contained information which originated with the Drug Enforcement Administration (DEA) and were referred to that agency for direct response to plaintiff in accordance with 28 C.F.R. § 16.4(c)(2). The USMS released seven (7) pages with information excised and withheld pursuant to exemptions 2 and 7(C) of the FOIA, 5 U.S.C. § 552(b)(2) and (b)(7)(C). Bordley Decl., Exhibit C.

63.  By letter dated December 19, 2005 (Request No. 2005USMS8601), the USMS responded to Plaintiff's request, informing him that after conducting a search of its files,

256 pages had been located which were indexed to Plaintiff's name.  Of this material, one
(1) page originated with the Bureau of Prisons (BOP), eight (8) pages originated with or
contained information which originated with the Drug Enforcement Administration
(DEA), 30 pages originated with the Federal Bureau of Investigation (FBI), and five (5)
pages originated with the Executive Office for U.S. Attorneys (EOUSA) and were
referred to those agencies for direct  response to Plaintiff in accordance with 28 C.F.R. §
16.4(c)(2).  The USMS released 148 pages to Plaintiff; 97 pages were released entirely,
51 pages were released with information excised and withheld pursuant to exemptions 2,
7(C), and 7(E) of the FOIA, 5 U.S.C. § 552(b)(2), (b)(7)(C), and (b)(7)(E).  The
remaining 64 pages were withheld in their entirety pursuant to exemptions 2, 7(C), and
7(E) of the FOIA.  Bordley Decl., Exhibit C-1.

64.    On December 13, 2005 (Request No. 2005USMS8588), and January 31, 2006 (Request
No. 2005USMS8601), respectively, the USMS received a copy of Plaintiff's
administrative appeals by letters dated November 2, 2005 (Request No.
2005USMS8588), and January 2, 2006 (2005USMS8601), respectively, to the
Department of Justice, Office of Information and Privacy (OIP), and a copy of OIP's
acknowledgment letters to Plaintiff dated November 21, 2005 (Request No.
2005USMS8588), and January 18, 2006 (Request No. 2005USMS8601), respectively.
Bordley Decl., Exhibit D and  D-1.

65.    Plaintiff, in his administrative appeals, emphasized the possible existence of additional
records concerning him; more specifically, a video surveillance tape supposedly seized as
evidence during Plaintiff's arrest at a hotel and casino in Reno, Nevada.  As a result, the

OGC consulted again with the districts to confirm the existence and whereabouts of such information.   The district(s) advised the OGC that while casinos are always tape recording, no video surveillance tape was requested or obtained by the USMS from the casino where plaintiff was arrested.  The USMS had no record of the video surveillance tape.  Bordley Decl. at ¶ 11.

66.    The USMS received a copy of OIP's letter to Plaintiff, dated April 25, 2006 (referencing Request Nos. 2005USMS8588 and 8601), in which OIP decided to release in its entirety a one page document previously released in part to plaintiff by the USMS in its December 19, 2005 letter (Request No. 2005USMS8601).  OIP affirmed the USMS remaining action and advised Plaintiff of his right to seek judicial review pursuant to 5 U.S.C. §552(a)(4)(B).  Bordley Decl., Exhibit E.

67.    By letter dated June 28, 2006 (Request No. 2005USMS8601), the USMS provided a supplemental response to Plaintiff's request.  The USMS informed Plaintiff in this response that seven (7) of eight (8) pages that were previously referred to the Drug Enforcement Administration (DEA) had been referred back to the USMS by the DEA and now were being released to him by the USMS, except for the names, addresses, telephone numbers, and other information on USMS and other government employees, third-party individuals, confidential sources and related information exempt from disclosure pursuant to exemptions 7(C), 7(D), and 7(F) of the FOIA, 5 U.S.C. § 552(b)(7)(C), (b)(7)(D), and (b)(7)(F).  Bordley Decl., Exhibit F.

68.    The USMS June 28, 2006 letter (Request No. 2005USMS8601) to Plaintiff disclosed the seven (7) pages of documents referred back to the USMS from DEA, and cited to

exemptions applied by both components.  The USMS asserted exemption 7(C) only to withhold the names of USMS employees and third-party individuals on all seven (7) pages.  Five (5) of these seven (7)  pages also contained information withheld by DEA pursuant to exemptions 7(C), 7(D), and 7(F) of the FOIA.  Bordley Decl. at ¶ 14.

69.    By letter dated June 30, 2006 (Request No. 2005USMS8601), the USMS provided a supplemental response to Plaintiff's request.  The USMS informed Plaintiff in this response that 30 pages that were previously referred to the Federal Bureau of Investigation (FBI) had been referred back to the USMS by the FBI and were now being released by the USMS to him, except for the names, telephone numbers, and other information on government employees and/or third-party individuals exempt from disclosure pursuant to exemption 7(C) of the FOIA, 5 U.S.C. § 552(b)(7)(C).  USMS Decl., Exhibit G.

70.    The FBI had referred these 30 pages of documents back to the USMS for processing pursuant to agency agreement.  The USMS June 30, 2006 letter (Request No. 2005USMS8601) disclosed all 30 pages to plaintiff; 10 pages were released entirely, and 20 pages were released with information excised and withheld pursuant to exemption 7(C).  Bordley Decl. at ¶ 16.

71.    Exemption 2 allows an agency to withhold matter related solely to internal personnel rules and practices of the agency. 5 U.S.C. § 552 (b)(2).  The USMS applied Exemption 2 to withhold internal agency case numbers used by investigative agencies to link particular asset records with ongoing investigation or litigation.  Release of the case numbers would enable a member of the public to ascertain the assets associated with a larger investigative

or litigative matter.  Assets seized in one area of a country might be linked through another agency's case number to a criminal case in another area.  Release of federal and state agency internal case numbers would compromise law enforcement actions in related cases.  This exemption was also applied to withhold an internal website address to CATS information.  Use of this database is restricted to DOJ components and other federal agencies participating in the Asset Forfeiture Program, and can only be accessed by those with proper authority.  Disclosure of this information would allow the public possible entry into the CATS database and could risk circumvention of the law.   Bordley Decl. at ¶ 17.

72.     Exemption 7(C) allows an agency to withhold records or information compiled for law enforcement purposes to the extent that production could reasonably be expected to constitute an unwarranted invasion of personal privacy.  5 U.S.C. § 552(b)(7)(C).  USMS applied Exemption 7(C) to withhold names, telephone numbers, and other information pertaining to USMS and/or government employees (law enforcement officers).  USMS Decl. at ¶ 18.

73.     USMS also applied Exemption 7(C) to withhold the names and numbers of prisoners, and names, addresses, telephone numbers, and other information on third-party individuals.  Id. at ¶ 19.

74.     Exemption 7(E) of the FOIA allows an agency to withhold records or information compiled for law enforcement purposes, to the extent that the production of such records or information could disclose guidelines or techniques and procedures for law enforcement investigations or prosecutions, if such disclosure could reasonably be

expected to risk circumvention of the law. 5 U.S.C. § 552(b)(7)(E).  USMS applied

Exemption 7(E) to withhold material, the primary purpose of which is to guide USMS

law enforcement officers in the performance of their law enforcement duties.  Information

withheld pursuant to exemption 7(E) consists of investigative techniques and procedures

utilized by the USMS in locating fugitives and, thus, would allow such persons to

circumvent investigative procedures and evade detection and apprehension efforts.  As

such, the information withheld pursuant to exemption 7(E) also meets the test of

"predominantly internal" information as discussed for exemption 2 protection above.

Bordley Decl. at ¶ 20.

75.     In connection with USMS Request Nos. 2005USMS8588 and 8601, USMS located a

total of 266 pages of records.  47 pages originated with, or contained information that

originated with, either the DEA, FBI, BOP, and EOUSA and the USMS referred those

pages to those agencies for disclosure determination and direct response to Plaintiff (37 of

these 47 pages referred to components were referred back to the USMS for disclosure

determination and direct response to Plaintiff); and 64 pages were withheld from

disclosure in their entirety pursuant to exemptions 2, 7(C), and 7(E) of the FOIA.  Of the

192 pages released to Plaintiff by the USMS, 108 pages were released entirely and 84

pages were released with information deleted and withheld pursuant to exemptions 2,

7(C), 7(D), 7(E), and 7(F) of the FOIA, with exemptions 7(D) and 7(F) being asserted by

DEA.  Four (4) of the referred pages were released by other agencies with USMS

deletions and six (6) referred pages were released by other agencies without USMS

deletions.  Bordley Decl. at ¶ 22.

Respectfully submitted,

      s/Jeffrey A. Taylor
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney


      s/Rudolph Contreras
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney


      s/Peter S. Smith
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

-21-

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARCO D. DUNCAN,                    )
                                    )
                Plaintiff,          )
                                    )
        v.                          )        Civil Action No. 06-1032 (GK)
                                    )
DRUG ENFORCEMENT ADMIN. &           )
 U.S. MARSHALS SERVICE,             )
                                    )
                Defendants.         )
_____     )

**MEMORANDUM IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Pro se Plaintiff Marco Duncan is a federal prisoner, serving a life sentence. United States

v. Duncan, 400 F.3d 1297, 1300 (11th Cir. 2005). This case arises under the Freedom of

Information Act (FOIA), 5 U.S.C. § 552, and pertains to the processing of Plaintiff's FOIA

requests by the Defendants, the Drug Enforcement Administration (DEA) and the United States

Marshals Service (USMS) for records concerning him, including his arrest and any of his seized

assets.

Defendants located 320 pages of responsive records. 125 pages were withheld in part and

74 pages were withheld in full. The remaining pages were released in full. The only

withholdings in dispute in this case are withholdings that include the names and identifying

information for witnesses and informants, the names of investigating federal agents, and

information about Defendants' investigations and internal processes. All of these withholdings

were proper pursuant to FOIA's statutory exemptions and, in this case, many of the withholdings

protect the Defendants' critical law enforcement information, personnel and operations.

Plaintiff's Complaint does not challenge the adequacy of the Defendants' search. Since there are

no material facts in dispute, Defendants are entitled to a judgment as a matter of law pursuant to Fed. R. Civ. P. 56.

## I.    **BACKGROUND**

By letter dated July 14, 2004, Plaintiff requested: (1) any and all DEA Forms 6, inventory lists, related arrest reports, and all information, and a list of evidence seized by several Special Agents and a Deputy U.S. Marshal, in regards to his arrest on April 21, 2003; and (2) any and all information regarding any "video surveillance seized from the El Dorado Hotel Security by this agency or any agency" in conjunction with his arrest.  Wassom Decl. (attached as Ex. 2), Exhibit A.  By letter dated July 5, 2005, Plaintiff requested "any and all materials for the entire central file that [DEA] and any other agencies under your supervision, as may be referred to below, has compiled to date relating to me. . . ."  Wassom Decl., Ex. F.  DEA interpreted these requests as requests for criminal investigative information concerning him.  All criminal investigative information about Plaintiff maintained by DEA was reasonably likely to be found in the DEA Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008.  No other system of records maintained by DEA was reasonably likely to contain investigative information about Plaintiff.  Wassom Decl. at ¶ 20.

A total of 54 pages of responsive material were reviewed and DEA located 43 pages of materials as a result of searches conducted in response to the direct requests from Plaintiff.  The USMS referred a total of 11 pages to DEA for review and release to Plaintiff.  Of the 11 pages referred by USMS, portions of four (4) pages were released to Plaintiff and (7) pages were returned to USMS for final processing.   In total, DEA released portions of 37 pages and withheld 10 in their entirety.  Wassom Decl. at ¶ 29.

Plaintiff also submitted a request letter to the USMS Headquarters, dated July 14, 2005, seeking information pertaining to himself and seized assets, and referenced certain file numbers (DEA File No. KV-01-0014 and 3:02CR20-RV).  Bordley Decl. at Exhibit A (attached as Ex. 1).  In accordance with USMS procedures for processing FOIA/PA requests for information on individuals and seized assets, the USMS divided the request into two separate requests, i.e., one for information on Plaintiff, assigned Request Number 2005USMS8601, and one for information on seized assets, assigned Request Number 2005USMS8588.  Bordley Decl. at ¶ 3.

In connection with those requests, the USMS located a total of 266 pages of responsive records.  Bordley Decl. at ¶ 22.  47 pages originated with, or contained information that originated with, either the DEA, FBI, BOP, and EOUSA and the USMS referred those pages to those agencies for disclosure determination and direct response to Plaintiff (37 of these 47 pages referred to components were referred back to the USMS for disclosure determination and direct response to Plaintiff); and 64 pages were withheld from disclosure in their entirety pursuant to FOIA exemptions 2, 7(C), and 7(E).  Bordley Decl. at ¶ 22.  Of the 192 pages released to Plaintiff by the USMS, 108 pages were released entirely and 84 pages were released with information deleted and withheld pursuant to exemptions 2, 7(C), 7(D), 7(E), and 7(F) of the FOIA.  Bordley Decl. at ¶ 22.  Four (4) of the referred pages were released by other agencies with USMS deletions and six (6) referred pages were released by other agencies without USMS deletions.  Bordley Decl. at ¶ 22.

## II.     <u>STANDARD OF REVIEW</u>

In a FOIA lawsuit, a federal agency is entitled to summary judgment once it demonstrates that no material facts are in dispute and that each document that falls within the class requested

either has been produced, is unidentifiable, or is exempt from disclosure.  Students Against

Genocide v. Dept. of State, 257 F.3d 828, 833 (D.C. Cir. 2001); Weisberg v. Dept. of Justice,

627 F.2d 365, 368 (D.C. Cir. 1980).

        An agency satisfies the summary judgment requirements in a FOIA case by providing the

Court and Plaintiff with affidavits or declarations and other evidence demonstrating that the

documents withheld are exempt from disclosure.  Hayden v. National Security Agency/Cent. Sec.

Serv., 608 F.2d at 1384, 1386; Church of Scientology v. U.S. Dept. of Army, 611 F.2d 738, 742

(9th Cir. 1980).  Summary judgment may be awarded to an agency in a FOIA case solely on the

basis of agency affidavits (or declarations) if the "affidavits are 'relatively detailed, non-

conclusory, and not impugned by evidence ... of bad faith on the part of the agency.'"  Public

Citizen, Inc. v. Dept. of State, 100 F. Supp.2d 10, 16 (D.D.C. 2000) (quoting McGhee v. Central

Intelligence Agency, 697 F.2d 1095, 1102 (D.C. Cir. 1983)); Citizens Commission on Human

Rights v. FDA, 45 F.3d 1325, 1329 (9th Cir. 1995); Bowen v. FDA, 925 F.2d 1224, 1227 (9th

Cir. 1991).  See also Hayden, 608 F.2d at 1387; Military Audit Project v. Casey, 656 F.2d 724,

738 (D.C. Cir. 1981).

        These declarations or affidavits (singly or collectively) are often referred to as a Vaughn

declarations and Vaughn indexes.  See Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), cert.

denied, 415 U.S. 977 (1974).  "A Vaughn index must: (1) identify each document withheld; (2)

state the statutory exemption claimed; and (3) explain how disclosure would damage the interests

protected by the claimed exemption."  Citizens Commission on Human Rights, 45 F.3d at 1326.

"Of course, the explanation of the exemption claim and the descriptions of withheld material

need not be so detailed as to reveal that which the agency wishes to conceal, but they must be

sufficiently specific to permit a reasoned judgment as to whether the material is actually exempt

under FOIA." Founding Church of Scientology v. Bell, 603 F.2d 945, 949 (D.C. Cir. 1979).

There is no set formula for a Vaughn index.  "[I]t is well established that the critical elements of

the Vaughn index lie in its function, and not in its form."  Kay v. FCC, 976 F. Supp. 23, 35

(D.D.C. 1997).  "The materials provided by the agency may take any form so long as they give

the reviewing court a reasonable basis to evaluate the claim of privilege."  Delaney, Midgail &

Young, Chartered v. IRS, 826 F.2d 124, 128 (D.C. Cir. 1987).  See also Keys v. U.S. Dept. of

Justice, 830 F.2d 337, 349 (D.C. Cir. 1987); Hinton v. Dept. of Justice, 844 F.2d 126, 129 (3d

Cir. 1988).  Defendants have provided two detailed declarations supporting their withholding

determinations that more than satisfy the applicable legal standards.  See Bordley Decl. (USMS),

attached as Ex. 1 and Wassom Decl. (DEA), attached as Ex. 2.

### III.    The Defendants Undertook a Proper and Legally Sufficient Search for Documents Responsive to Plaintiff's FOIA Requests.

Although Plaintiff's Complaint does not challenge the adequacy of Defendants' search,

the FOIA requires agencies to conduct reasonable searches for records issued pursuant to the

statute.  See Weisburg v. Dept of Justice, 745 F. 2d at 1485.  In this regard, agencies are required

to make a "good faith effort to conduct a search for the requested records, using methods which

can be reasonably expected to produce the information requested." Oglesby v. Department of the

Army, 920 F. 2d 57, 68 (D.C. Cir. 1990).  The fundamental "question is not 'whether there might

exist any other documents possibly responsive to the request, but rather whether the search for

those documents was adequate.'" Steinberg v. Dept of Justice , 23 F.3d 548, 551 (D.C. Cir.

1994), quoting Weisberg, 745 F. 2d at 1485.  An agency can establish the reasonableness of its

search by affidavits, so long as statements in those affidavits are sufficiently detailed, are non-

conclusory, and are offered in good faith.  Weisberg, 745 F. 2d at 1485; Perry v. Block, 684 F.2d

121, 126 (D.C. Cir. 1982).  In the absence of countervailing evidence, or apparent inconsistency

of proof, affidavits that explain in reasonable detail the scope and method of the search

conducted by the agency will suffice to demonstrate compliance with the obligations imposed by

the FOIA.  Perry, 684 F. 2d at 127.

    The agency's search should be reasonably calculated to uncover all responsive records.

Weisberg, 745 F.2d at 1485.  The FOIA does not require that the agency search every record

system.  Oglesby, 920 F.2d at 68.  Furthermore, the agency is not required to speculate about

potential leads to the location of responsive documents.  Kowalczyk v. Department of Justice, 73

F.3d 386, 389 (D.C. Cir. 1996).  The attached declarations demonstrate through detailed, non-

conclusory and good faith averments that, in this case, Defendants engaged in a "good faith effort

to conduct a search for the requested records, using methods which can be reasonably expected to

produce the information requested." Oglesby v. Department of the Army, 920 F. 2d at 68.

Plaintiff's FOIA request sought all records pertaining to him and to his arrest and seized assets.

Defendants responded by searching their files reasonably likely to contain the requested records.

    With respect to the DEA, all criminal investigative information concerning the Plaintiff

maintained by DEA would be found in the DEA Investigative Reporting and Filing System

(IRFS), JUSTICE/DEA-008.  Wassom Decl. at ¶ 25.  No other system of records maintained by

DEA was reasonably likely to contain investigative information about Plaintiff.  Id.  IRFS is a

DEA Privacy Act System of Records that contains all administrative, general and investigative

files compiled by DEA for law enforcement purposes.  Wassom Decl. at ¶ 26.  Therefore, no

other records system within DEA is reasonably likely to contain investigation information

responsive to Plaintiff's request.  Id.  The DEA Narcotics and Dangerous Drugs Information

System (NADDIS) is the index to and the practical means by which DEA retrieves investigative

reports and information from IRFS.   Wassom Decl. at ¶ 27.  Individuals are indexed and

identified in NADDIS by their name, Social Security Number, and/or date of birth.  Id.  In

response to Plaintiff's requests, DEA conducted NADDIS queries using Plaintiff's name, Social

Security Number and date of birth.  Wassom Decl. at ¶ 28.  The DEA declarant personally

reviewed DEA investigative files and found no evidence of the existence of any video

surveillance of Plaintiff in the case files.  Wassom Decl. at ¶ 33.

       With respect to the USMS requests, the USMS conducted a search for records on

Plaintiff, by his name and/or personal identifier, pursuant to his request, in the USMS offices he

identified, i.e., the Northern District of Florida and the District of Nevada.  Bordley Decl. at ¶ 5.

The USMS extended its search to other district offices that were subsequently determined to have

records on Plaintiff: the Eastern and Northern Districts of California.  Id.  The USMS searched in

all locations that could reasonably be expected to contain responsive records on Plaintiff.  Id.

The USMS systems of records routinely encompassed by a search for prisoner records is the

Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS),

JUSTICE/USM-005, and the Warrant Information Network (WIN), JUSTICE/USM-007.  Id. at ¶

6.  These systems of records are searched by an individual's name and/or personal identifier;

records pertaining to Plaintiff were located in the PPM/PTS and WIN systems of records.  Id.

       The USMS also searched for any seized assets related to Plaintiff and his arrest in the

Consolidated Asset Tracking System (CATS).  Id. at ¶ 7.  The CATS database is a single

integrated asset forfeiture information system for use by DOJ components and other federal

agencies for law enforcement associated with civil and criminal forfeiture of assets.  Id.  This

database includes information identifying the asset location and identification number, name and

address of owner and other parties having a lien or interest, names of seizing agencies, probable

cause for seizure and the statutory basis for the action, disposal decision, and other information.

Id.  The USMS searched CATS by the applicable civil and agency case numbers and located ten

pages of responsive records.  Id.

Based on the description of the nature and scope of the Defendants' searches for the

records responsive to Plaintiff's FOIA requests as set forth in the respective declarations, it is

clear that they conducted reasonable searches for responsive records.  It is also clear that, in

conducting those searches, they used methods "which can be reasonably expected to produce the

information requested." Oglesby v. Department of the Army, 920 F.2d at 68.  The Defendants

thus satisfied the search obligations imposed upon them under law.

**IV.    The Defendants Properly Applied Exemptions 2, 7(C), 7(D), 7(E) and 7(F)**.

A.    Exemption 2

Exemption 2 under FOIA exempts from mandatory disclosure records that are "related

solely to the internal personnel rules and practices of an agency."  5 U.S.C. § 552(b)(2).  Not long

after FOIA was passed, the Supreme Court declared that Exemption 2 was intended to relieve

agencies of the burden of assembling and providing access to any "matter in which the public

could not reasonably be expected to have an interest" and matters of public interest "where

disclosure may risk circumvention of agency regulation."  Department of Air Force v. Rose, 425

U.S. 352, 369-70 (1976).  Subsequently, courts have approved two general categories of

withholdings under Exemption 2: (1) internal matters of a relatively trivial nature (sometimes

referred to as "low-2"); and (2) more substantial internal matters for which disclosure would risk

circumvention of a legal requirement (sometimes called "high-2"). Schiller v. NLRB, 964 F.2d

1205, 1207 (D.C. Cir. 1992); see Crooker v. ATF, 670 F.2d 1051 (D.C. Cir. 1981) (en banc)

(setting forth a two part test for high-2 material).

     In this case, DEA withheld "violator identifiers" consisting of Geographical Drug

Enforcement Program codes ("G-DEP"), NADDIS numbers assigned to convicted and suspected

violators of drug trafficking laws and confidential informant numbers. Wassom Decl. ¶ 54.

These items are used only internally by DEA to identify aspects of particular investigations, such

as the types of activities involved, the priority the investigation receives, and the ratings of the

suspects. Id. Disclosure of these items would risk allowing individuals to gain access to these

information systems and to discover subjects of DEA's ongoing investigations or other

prosecution efforts. Id. at ¶ 55. DEA also withheld internal computer terminal numbers and

telephone numbers. Id. at ¶ 57. Because the aforementioned information is purely internal and

disclosure would significantly risk circumvention of the law, disclosure is plainly unwarranted.

Prows v. United States Dep't of Justice, No. 90-2561, 1996 WL 228463, at *2 (D.D.C. Apr. 25,

1996) (protecting internal DEA markings and phrases, including G-DEP and NADDIS codes,

that could, if released, facilitate improper access to sensitive information); Hall v. United States

Dep't of Justice, No. 87-474, 1989 WL 24542, at *2 (D.D.C. Mar. 8, 1989) (protecting various

items that "could facilitate unauthorized access to [agency] computer systems"); Institute for

Policy Studies v. Dep't of the Air Force, 676 F. Supp. 3, 5 (D.D.C. 1987) (exempting record

revealing sensitive portions of agency's computer system which could be used to locate system's

vulnerabilities); see Windels, Marx, Davies & Ives v. Department of Commerce, 576 F. Supp.

405, 412 (D.D.C. 1983) (protecting computer program under Exemptions 2 and 7(E) because it merely instructs computer how to detect possible violations of law and does not regulate or modify public behavior). Similarly, the USMS withheld internal agency case numbers used by investigative agencies to link particular asset records with ongoing investigations or litigation. Bordley Decl. at ¶ 17. Relase of the case numbers would enable a member of the public to ascertain what assets are the subject of a larger investigation and thus could compromise law enforcement efforts. Id. The USMS also withheld an internal website address for CATS information. That database has restricted access. Id. Disclosure of the website address could allow the public to hack into the CATS database, risking circumvention of the law. Id. Accordingly, DEA and the USMS properly applied Exemption 2 to protect internal sensitive information for which no public interest in release exists.

    B.    <u>Exemption 7(C)</u>

The FOIA exempts from the requirement of disclosure

> (7) records or information compiled for law enforcement purposes, . . . to the extent that the production of such law enforcement records or information . . . (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy. . . .

5 U.S.C. § (b)(7)(C). This exemption protects the identities of suspects and other persons of investigatory interest who are identified in agency records in connection with law enforcement investigations. <u>Reporters Comm. for Freedom of the Press v. U.S. Dept of Justice</u>, 816 F.2d 730, 780 (D.C. Cir. 1987), <u>modified on other grounds</u>, 831 F.2d 1124 (D.C. Cir. 1987), <u>rev'd on other grounds</u>, 489 U.S. 749 (1989); <u>Computer Prof'ls for Social Responsibility v. U.S. Secret Serv.</u>, 72 F.3d 897, 904 (D.C. Cir. 1996). Indeed, the mere mention of identities of witnesses or other persons in law enforcement files in such a way as to associate them with criminal activity is

subject to protection under Exemption 7(C).  Reporters Comm. for Freedom of the Press, 489

U.S. at 780; Nation Magazine v. U.S. Customs Service, 71 F.3d 885, 893, 895-96 (D.C. Cir.

1995); SafeCard Services, Inc. v. S.E.C., 926 F.2d 1197, 1206 (D.C. Cir. 1991).

     In addition, the names of law enforcement officers who work on criminal investigations

have been protected against release by Exemption 7(C).  Davis v. U.S. Dep't of Justice, 968 F.2d

1276, 1281 (D.C. Cir. 1992); Lesar v. U.S. Dept of Justice, 636 F.2d 472, 487-88 (D.C. Cir.

1980).  Similarly, individuals who provide information to law enforcement authorities, like the

law enforcement personnel themselves, have protectable privacy interests in their anonymity.

Computer Prof'ls for Social Responsibility, 72 F.3d at 904; Farese v. U.S. Dep't of Justice, 683

F. Supp. 273, 275 (D.D.C. 1987).  The fact that the requester might be able to figure out the

individuals' identities through other means, or that their identities have been disclosed elsewhere,

does not diminish the privacy interests at stake.  Fitzgibbon v. CIA, 911 F.2d 755 (D.C. Cir.

1990); Weisberg v. Dep't of Justice, 745 F.2d at 1476.

     Once a privacy interest has been established, it must be balanced against the public

interest, if any, that would be served by disclosure.  Albuquerque Publ'g Co. v. Dep't of Justice,

726 F. Supp. 851, 855 (D.D.C. 1989).  The public interest in disclosure is limited to the FOIA's

"core purpose" of shed[ing] light on an agency's performance of its statutory duties."  Reporters

Comm. for Freedom of the Press v. U.S. Dept of Justice, 489 U.S. 749, 773 (1989).  Accord

National Archives and Records Administration v. Favish, 541 U.S. 157, 173-74 (2004).  This

standard is not easily satisfied when law enforcement information pertaining to individuals is

sought, for there "is no reasonably conceivable way in which the release of one individual's

name . . . would allow citizens to know 'what their government is up to.'"  Fitzgibbon v. CIA,

911 F.2d 755, 768 (D.C. Cir. 1990).  See also Albuquerque Publ'g Co., 726 F. Supp. at 855-56

(no public interest in disclosure of sensitive information DEA obtained about individuals and

their activities, where such material would not shed light on DEA's conduct with respect to the

investigation).  Furthermore, in order to overcome legitimate privacy interests, the requester must

not only demonstrate the existence of the public interest, but also that the public interest is both

significant and compelling.  Favish, supra; Senate of Puerto Rico v. Dep't of Justice, 823 F.2d

574, 588 (D.C. Cir. 1987).

     Records compiled in the course of an inquiry that focuses with special intensity upon an

identifiable possible violation of law are records that have been compiled for "law enforcement

purposes."  Birch v. United States, 803 F.2d 1206 (D.C. Cir. 1986).  Defendants DEA and USMS

clearly are law enforcement organizations.  Their investigations focus on potential violations of

the law, including apprehending fugitives (USMS) and investigating violations of laws

concerning controlled substances (DEA).  The investigative files here clearly were compiled for

law enforcement purposes because they concern Plaintiff's arrest.  Courts have interpreted "law

enforcement purposes" even more broadly.  Cf. Kimberlin v. DOJ, 139 F.3d 944, 947-48 (D.C.

Cir. 1998) (investigation of potentially illegal release of information by employee satisfied the

7(C) standard); Stern v. FBI, 737 F.2d 84, 89 (D.C. Cir. 1984) (investigations of government

employees are compiled for law enforcement purposes if they focus on "specific and potentially

unlawful activity by particular employees" of a civil or criminal nature).

     In asserting Exemption 7(C), DEA withheld the identities of  DEA Special Agents, DEA

laboratory personnel, and other Federal, state/local law enforcement officers.  Wassom Decl. at ¶

65.  The Special Agents and other law enforcement officers and personnel were assigned to

-12-

handle tasks relating to the official investigation into the criminal activities of the Plaintiff and

other individuals.  Id. at ¶ 66.  They were, and possibly still are, in positions of access to

information regarding official law enforcement investigations.  Id.  If their identities are released,

they could become targets of harassing inquiries for unauthorized access to information

pertaining to ongoing and closed investigations.  Id.  In withholding the information, the

individual's privacy interest in the information was balanced against the public's interest in

disclosure.  Id. at 65-67.  In each instance where information was withheld, the DEA determined

that individual privacy interests outweighed any public interest.  Id.  The public interest in

disclosure was assessed by determining whether the information in question would inform

Plaintiff or the general public about the DEA's performance of its statutory mission and/or how

the DEA actually conducts it internal operations and investigations.  Id.

 Similarly, the USMS withheld the names, addresses, telephone numbers, and other related

information on USMS and other government law enforcement officer employees, third-party

individuals and  confidential sources.  Bordley Decl. at ¶¶ 13, 18.  The USMS specifically

balanced the public interest in disclosure and withheld the material for the same reasons as the

DEA, as discussed above.

 _ 1. DEA Special Agents.

 The identities of law enforcement personnel who work on criminal investigations have

traditionally been protected against release by Exemption 7(C), unless there is proven, significant

misconduct on the part of the investigators, as public identification of these individuals could

conceivably subject them to harassment or annoyance in the conduct of their official duties and

in their private lives.  See, e.g., Nix v. United States, 572 F.2D 998, 1006 (4th Cir. 1978); Isley v.

Executive Office for U.S. Attorneys, 203 F.3d 52 (Table), 1999 WL 1021934, Oct 21, 1999;

Manna v. United States Dep't of Justice, 51 F.3d 1158, 1166 (3d Cir. 1995); Jones v. FBI, 41

F.3d 238, 246 (6th Cir. 1994); Hale v. United States Dep't of Justice, 973 F.2d 894, 902 (10th

Cir. 1992), cert. granted, vacated & remanded on other grounds, 509 U.S. 918 (1993). Given the

absence of any allegations of misconduct on the part of the Special Agents whose names were

redacted, Exemption 7(C) was appropriately applied in this case to protect their names. An

agent's assignment to investigations is not a product of his or her own choice, and publicity

(adverse or otherwise) regarding any particular investigation may seriously prejudice his or her

effectiveness in conducting other investigations.

> 2. Names/Identifying Information of Third Parties.

Exemption 7(C) was applied to protect the names, addresses, and other identifying

information pertaining to private citizens whose information is part of the investigation. Under

Exemption 7(C), witnesses and third parties to investigations, even if they are not suspects or the

subject of the investigation, possess strong privacy interests because disclosure of their names

and other identifying information could subject them to embarrassment and harassment. See

Computer Prof'ls for Soc. Responsibility v. United States Secret Serv., 72 F.3d 897, 902 (D.C.

Cir. 1996).

> C. Exemption 7(D)

Exemption 7(D) of the FOIA exempts from mandatory disclosure records or information

compiled for law enforcement purposes if the disclosure:

> could reasonably be expected to disclose the identity of a confidential source,
> including a State, local, or foreign agency or authority or any private institution
> which furnished information on a confidential basis, and, in the case of a record or
> information compiled by a criminal law enforcement authority in the course of a

criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source.

5 U.S.C. § 552 (b)(7)(D).  Exemption 7(D)'s "paramount objective" "is to keep open the Government's channels of confidential information."  Birch v. United States Postal Serv., 803 F.2d 1206, 1212 (D.C. Cir. 1986).[1]

When invoking Exemption 7(D), the agency must demonstrate that the information was compiled for a law enforcement purpose, that an informant provided the information under either an express or an implied promise of confidentiality and, under the first clause of 7(D), that disclosure could reasonably be expected to disclose the source's identity.  United States Dep't of Justice v. Landano, 508 U.S. 165, 171-72 (1993).  If an individual has not been given an express promise of confidentiality, the agency may demonstrate that a source has been given an implied promise of confidentiality based upon the circumstances of the case.  Landano, 508 U.S. at 179-80.  The government may establish implied assurances of confidentiality by describing "generic circumstances in which an implied assurance of confidentiality fairly can be inferred."  Id. at 179.  However, once an agency establishes an express or implied promise of confidentiality, it is extremely difficult to overcome.  In order to do so, Plaintiff must come forward with "'absolutely solid evidence showing that the source . . . in a law enforcement investigation has manifested

---

[1]  The term "confidential source" is very broad.  See, e.g., Gula v. Meese, 699 F. Supp. 956, 960 (D.D.C. 1988) (crime victims); Putnam v. United States Dep't of Justice, 873 F. Supp. 705, 716 (D.D.C. 1995) (medical personnel).  Moreover, the term "confidential" signifies that the information was provided in confidence or in trust, with the assurance that it would not be disclosed to others.  Dow Jones & Co. v. Department of Justice, 917 F.2d 571, 575-76 (D.C. Cir. 1990).  As such, "the question is not whether the requested document is of the type that the agency usually treats as confidential, but whether the particular source spoke with an understanding that the communication would remain confidential."  United States Dep't of Justice v. Landano, 508 U.S. 165, 172 (1993).

complete disregard for confidentiality.'" Parker, 934 F.2d at 378, quoting Dow Jones & Co. v. Department of Justice, 908 F.2d 1006, 1011 (D.C. Cir.), reh'g denied en banc, 917 F.2d 571 (D.C. Cir. 1990).

The Court in Landano stressed two factors to be considered in determining whether an implied promise of confidentiality exists: "the nature of the crime investigated and the witness' relation to it." Id. at 181. In applying these factors, a key consideration is the potential for retaliation against the source. Id. at 179-180; see also, Williams v. FBI, 69 F.3d 1155, 1159 (D.C. Cir. 1995) (implied assurance of confidentiality found where crimes investigated were serious and violent and sources were "sufficiently close to" targets of investigation); Hale v. Dept. of Justice, 99 F.3d 1025, 1031 (10th Cir. 1996).

Once the agency has demonstrated that information was given by a confidential informant, Exemption 7(D) applies not only to the name of the source, but to other information as well. The first clause of Exemption 7(D) not only protects obviously identifying information, such as an informant's name and address, but also all information which would tend to reveal the source's identity. Pollard v. FBI, 705 F.2d 1151, 1155 (9th Cir. 1983); see also Stone v. Defense Investigative Serv., 816 F. Supp. 782, 788 (D.D.C. 1993) (protecting "information so singular that to release it would likely identify the individual"); Doe v. U.S. Dept. of Justice, 790 F. Supp. 17, 21 (D.D.C. 1992) (when source is well known to individual investigated, agency must protect "even the most oblique indications of identity"). The second clause of Exemption 7(D) broadly protects all "information furnished by a confidential source" to law enforcement authorities in the course of a criminal or lawful national security intelligence investigation.

Importantly, unlike some other FOIA exemptions, Exemption 7(D) does not require a

balancing of public and private interests.  Parker v. Department of Justice, 934 F.2d 375, 380

(D.C. Cir. 1991) (the "judiciary is not to balance interests under Exemption 7(D)"); Jones v. FBI,

41 F.3d 238, 247 (6th Cir. 1994) ("[t]his exemption does not involve a balancing of public and

private interests; if the source was confidential, the exemption may be claimed regardless of the

public interest in disclosure").  Therefore, "once the agency receives information from a

"'confidential source" during the course of a legitimate criminal investigation . . . all such

information obtained from the confidential source receives protection.'"  Parker, 934 F.2d at 380

(editing by the court, quoting Lesar v. United States Dep't of Justice, 636 F.2d 472, 492 & n. 114

(D.C. Cir. 1980)).  Moreover, Exemption 7(D) continues to apply even after an investigation has

been closed, Ortiz v. HHS, 70 F.3d 729, 733 (2d Cir. 1995), cert. denied, 517 U.S. 1136 (1996),

and after the death of the source.  Campbell v. Dept. of Justice, 164 F.3d 20, 33 n.14 (D.C. Cir.

1998).  DEA utilized confidential informants in Plaintiff's case and withheld information under

Exemption 7(D).  Wassom Decl. at ¶¶ 70-71 (regarding coded confidential informants who have

an express assurance of confidentiality with DEA).

    D.  Exemption 7(E)

    Exemption 7(E) of the FOIA allows an agency to withhold records or information

compiled for law enforcement purposes, to the extent that the production of such records or

information could disclose guidelines or techniques and procedures for law enforcement

investigations or prosecutions, if such disclosure could reasonably be expected to risk

circumvention of the law.  5 U.S.C. § 552(b)(7)(E).  The USMS applied exemption 7(E), in

conjunction with exemption 2, to withhold material, the primary purpose of which is to guide

USMS law enforcement officers in the performance of their law enforcement duties.  Bordley

Decl. at ¶ 20.  The USMS withheld information under exemption 7(E) consisting of investigative

techniques and procedures utilized by the USMS in locating fugitives, which would allow such

persons to circumvent investigative procedures and evade detection and apprehension efforts.  Id.

As such, the information withheld pursuant to exemption 7(E) also meets the test of

"predominantly internal" information as discussed for exemption 2 protection above.

    E.  Exemption 7(F)

    DEA withheld the names of  DEA Special Agents, Supervisory Special Agents, United

States Customs Service (USCS), other Federal law enforcement personnel, a state/local law

enforcement officer, and confidential sources of information pursuant to 5 U.S.C. § 552

(b)(7)(F).  Wassom Decl. at ¶ 72.  Exemption 7(F) allows agencies to withhold identifying

information of individuals when disclosure "could reasonably be expected to endanger [that

person's] life or physical safety.  5 U.S.C. § 552(b)(7)(F).  DEA Special Agents routinely

approach and associate with violators in a covert capacity.  Wassom Decl. at ¶ 74.  Many of those

violators are armed and many have known violent tendencies.  Id.  It has been the experience of

DEA that the release of Special Agents' identities has, in the past, resulted in several instances of

physical attacks, threats, harassment and attempted murder of undercover and other DEA Special

Agents.  Id.

    Plaintiff was tried along with several co-defendants.  Plaintiff was convicted of, inter alia,

conspiracy to distribute controlled substances, namely five kilograms or more of cocaine.  United

States v. Duncan, 400 F.3d 1297, 1300 (11th Cir. 2005).  Due to the seriousness of the offenses

and Duncan's criminal history, the district court sentenced Duncan to life imprisonment and

ordered forfeiture in the amount of $340,000.  Id.  The serious and potentially violent nature of

such crimes coupled with Plaintiff's life sentence supports DEA's treatment of strict

confidentiality for the informant and the law enforcement personnel involved in his case. Cf.

Perrone v. FBI, 908 F. Supp. 24 (D.D.C. 1995) (upholding application of Exemption 7(F) in case

involving a plaintiff who had been convicted of drug trafficking offenses). In fact, DEA

considers it to be within the public interest not to disclose the identity of Special Agents so that

they may effectively pursue their undercover and investigatory assignments. Wassom Decl. at ¶

75. These assignments are a necessary element in support of DEA's objective -- the suppression

of the illicit traffic of narcotic and dangerous drugs. Id.

**V.    Segregability**

The FOIA requires that if a record contains information that is exempt from disclosure,

any "reasonably segregable" information must be disclosed after deletion of the exempt

information unless the non-exempt portions are "inextricably intertwined with exempt portions."

5 U.S.C. § 552(b); Mead Data Cent., Inc. v. United States Dept. of the Air Force, 566 F.2d 242,

260 (D.C. Cir. 1977). The Court of Appeals for the District of Columbia Circuit has held that a

District Court considering a FOIA action has "an affirmative duty to consider the segregability

issue sua sponte." Trans-Pacific Policing Agreement v. United States Customs Service, 177 F.3d

1022, 1028 (D.C. Cir. 1999).

In order to demonstrate that all reasonably segregable material has been released, the

agency must provide a "detailed justification" rather than "conclusory statements". Mead Data,

566 F.2d at 261. The agency is not, however, required "to provide such a detailed justification"

that the exempt material would effectively be disclosed. Id. All that is required is that the

government show "with 'reasonable specificity'" why a document cannot be further segregated.

-19-

Armstrong v. Executive Office of the President, 97 F.3d 575, 578-79 (D.C. Cir. 1996).

Moreover, the agency is not required to "commit significant time and resources to the separation

of disjointed words, phrases, or even sentences which taken separately or together have minimal

or no information content."  Mead Data, 566 F.2d at 261, n.55.

　　　　In this case, the DEA expressly considered the segregability issue and concluded that no

additional information could be released to Plaintiff.  Wassom Decl. ¶¶ 76-82.   DEA recently

re-reviewed its redactions to determine whether information previously withheld could be

released, and indeed, released more information.  Id. at ¶¶ 9-10.  On appeal, the DOJ's Office of

Information and Privacy (OIP) also considered DEA's withholdings.  See, e.g., id. at ¶ 17.  All

non-exempt and reasonably segregable portions of these documents have been released to

Plaintiff.  Id. ¶ 82.  Likewise, the USMS carefully segregated the releasable portions of its

records.   That process is set forth in its declaration.  Bordely Decl. at ¶ 21.  As with DEA's

release determinations, the USMS response to Plaintiff's FOIA requests was reviewed and

upheld by the OIP, with the additional release of one page.  Bordley Decl. at ¶¶ 10-12.

## CONCLUSION

As set forth above, the Defendants have responded properly to Plaintiff's FOIA request and have complied with their obligations under the FOIA. Accordingly, the Court should grant Defendants' motion for summary judgment.

Respectfully submitted,

_____s/Jeffrey A. Taylor_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
Interim United States Attorney


_____s/Rudolph Contreras_____
RUDOLPH CONTRERAS, D.C. BAR #  434122
Assistant United States Attorney

_____s/Peter S. Smith_____
PETER S. SMITH, D.C. BAR # 465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372

## CERTIFICATE OF SERVICE

**I  HEREBY  CERTIFY** that on this 17th day of November, 2006, a true and correct copy

of the foregoing Motion for Summary Judgment and supporting papers was served upon Plaintiff

**MARCO D. DUNCAN,**  via First Class prepaid postage as follows:

> **MARCO D. DUNCAN**
> **#37679-048**
> **U.S. Penitentiary - Atwater**
> **P.O. Box 019001**
> **Atwater, CA 95301**

/s Peter Smith

_____
PETER S. SMITH,  D.C. Bar #465131
Assistant United States Attorney
United States Attorney's Office
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
(202) 307-0372