UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARCO D. DUNCAN,                                    )
                                                    )
                    Plaintiff,                      )
                                                    )
        v.                                          )
                                                    )     Civil Action No. 06–1032 GK
DRUG ENFORCEMENT ADMINISTRATION, )
                                                    )
                    Defendant.                      )
_____ )

## DECLARATION OF LEILA I. WASSOM

1. I am a Drug Enforcement Administration (DEA) Paralegal Specialist, currently assigned to the Office of Chief Counsel, Administrative Law Section (CCA), DEA Headquarters, Washington, D.C. From August 1991 to June 2005, I was assigned to the Freedom of Information and Records Management Section, DEA Headquarters.

2. I review for litigation purposes both the initially processed and appealed Freedom of Information Act (FOIA) and Privacy Act (PA) requests received by DEA. I have performed these duties at DEA since 1991.

3. My duties require that I am familiar with the policies and practices of DEA regarding the processing and release of information requested under the FOIA/PA, and the application of the FOIA/PA and exemptions for which I have received formal and on the job training.



GOVERNMENT
EXHIBIT
2

4.  In preparing this declaration, I have read and am familiar with the complaint, in the above

entitled action, and the records maintained by the DEA Freedom of Information Operations Unit (SARO).

5.  SARO is the DEA office responsible for responding to, the search for, and the processing and

release of information requested under FOIA and PA.  I am familiar with the policies, practices

and procedures employed by SARO that relate to the search for, and the processing and release of

information responsive to FOI/PA requests received by the DEA.

## SUMMARY OF CORRESPONDENCE

### DEA FOIA Request No. 04-1519-P

6.  By letter dated July 14, 2004, the plaintiff requested (1) any and all DEA Forms 6, inventory

lists, related arrest reports, and all information and a list of evidence seized by several Special

Agents and a Deputy U.S. Marshal in regards to his arrest on April 21, 2003, and (2) any and all

information regarding any "video surveillance seized from the El Dorado Hotel Security by this

agency or any agency" in conjunction with his arrest.  A copy of the plaintiff's letter dated July

14, 2004, is attached as Exhibit A.

7.  By letter dated July 22, 2004, DEA acknowledged the plaintiff's request, and informed the

plaintiff that his request was assigned DEA FOIA Request No. 04-1519-P and that his request

would be processed in chronological order based on the date of its letter.  The letter also

confirmed the plaintiff's obligation to pay all applicable fees up to $25.00.[1]  A copy of the DEA

letter dated July 22, 2004, is attached as Exhibit B.

---

[1] By undated note, the plaintiff forwarded a $25.00 money order to DEA.  However, by
letter dated August 20, 2004, DEA returned the money order to the plaintiff, informing him that
no costs were incurred in processing the request.

8. By letter dated August 11, 2004, DEA released portions of 29 pages to the plaintiff. Twelve pages were withheld in their entirety. Information was withheld pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F), and section (j)(2) of the Privacy Act. A copy of the DEA letter dated August 11, 2004, is attached as Exhibit C.

9. Pursuant to a litigation review, by letter dated September 18, 2006, a supplemental release was made to the plaintiff. The release included portions of two (2) pages, numbered 13 and 23 that were previously withheld in their entirety, and a single page, numbered 41, that contained additional information which could be released. A copy of the DEA letter dated September 18, 2006, is attached as Exhibit D.

10. By letter dated September 18, 2006, a second supplemental release was made to the plaintiff. The release included portions of a single page, numbered 24, that contained additional information which could be released. A copy of the DEA letter dated September 27, 2006, is attached as Exhibit E.

11. There is no record that the plaintiff appealed the initial DEA action to the Department of Justice, Office of Information and Privacy (OIP).

### DEA FOIA Request No. 05-1295-P

12. By letter dated July 5, 2005, the plaintiff, referencing "[f]reedom of information request for entire central File (sic) Title: Albert Howard DEA File #KV-01-0014 and [G-DEP] Identifier #XNR3R said information is in conjunction with my criminal case #3;02c20-RV", requested "any and all materials for the entire central file that [DEA] and any other agencies under your

-3-

supervision, as may be referred to below, has compiled to date relating to me. . . ." A copy of the plaintiff's letter dated July 5, 2005, is attached as Exhibit F.

13. By letter dated July 28, 2005, DEA acknowledged the plaintiff's request, and informed him that the request was assigned DEA FOIA Request No. 05-1295-P and it would be processed in chronological order based on the date of its letter. Also, the letter informed the plaintiff that his letter confirmed his obligation to pay all applicable fees up to $25.00. A copy of the DEA letter dated July 28, 2005, is attached as Exhibit G.

14. By letter dated September 8, 2005, DEA informed the plaintiff that a request from him, request 04-1519-P, was previously processed and no further information other than that previously sent was available to him. A copy of the DEA letter dated September 8, 2005, is attached as Exhibit H.

15. By letter dated October 17, 2005, the plaintiff appealed DEA's response to OIP, requesting his entire file and a *Vaughn* index. A copy of the plaintiff's letter dated October 17, 2005, is attached as Exhibit I.

16. By letter dated October 28, 2005, OIP acknowledged the plaintiff's appeal and informed him that it would be handled in approximate order of receipt. A copy of the OIP letter dated October 28, 2005, is attached as Exhibit J.

17. By letter dated March 8, 2006, OIP affirmed the DEA response on several grounds. First, OIP upheld the DEA determination to treat the plaintiff's request assigned DEA FOIA Request No. 04-1519-P as a request for all records concerning himself. Second, no further records had

-4-

been created by DEA since the earlier request. Third, OIP denied the plaintiff's appeal on the

grounds that, if it was an attempt to appeal the DEA response to DEA Request No. 04-1519, it

was untimely. Finally, regarding the plaintiff's request for a *Vaughn* index, OIP informed the

plaintiff that he was not entitled to an itemized justification for each item of information withheld

at the administrative stage of processing an FOIA request. A copy of the OIP letter dated March

8, 2006, is attached as Exhibit K.

### DEA FOIA Request No. 06-0114-P

18. By letter dated October 24, 2005, the United States Marshals Service (USMS) forwarded

three pages to DEA for review and direct response to the requester and a copy of the plaintiff's

request to USMS. A copy of the USMS letter dated October 24, 2005, is attached as Exhibit L.

19. By letter dated November 15, 2005, DEA informed the plaintiff that it been asked by USMS

to review certain materials that originated within DEA, the request was assigned DEA FOIA

Request No. 06-0114-P, and that the materials would be processed in chronological order based

on the date of its letter. A copy of the DEA letter dated November 15, 2005, is attached as

Exhibit M.

20. By letter dated December 15, 2005, DEA released portions of three (3) pages to the plaintiff.

Information was withheld pursuant to FOIA exemptions (b)(2) and (b)(7)(C)[2]. A copy of the

DEA letter dated December 15, 2005, is attached as Exhibit N.

---

[2] FOIA Exemption (b)(7)(C) was erroneously cited in the DEA determination letter.
DEA is no longer asserting Exemption (b)(7)(C) as a basis to withhold information on any the
three (3) pages,

## DEA FOIA Request No. 06-0375-P

21. By letter dated December 19, 2005, the USMS referred eight (8) pages to DEA for review and direct response to the requester, along with a copy of the plaintiff's request. The USMS informed DEA that it was withholding names of USMS employees and third parties pursuant to FOIA exemption (b)(7)(C). A copy of the USMS letter dated December 19, 2005, is attached as Exhibit O.

22. By letter dated January 5, 2006, DEA informed the plaintiff that it been asked by USMS to review certain materials that originated within DEA, that the referral was assigned DEA FOIA Request No. 06-0375-P, and that the materials would be processed in chronological order based on the date of its letter. A copy of the DEA letter dated January 5, 2006, is attached as Exhibit P.

23. By letter dated March 1, 2006, DEA returned seven (7) of the eight (8) referred pages to USMS[3] for direct response to the requester, stating that the seven pages originated within USMS. DEA indicated that it was withholding information pursuant to FOIA exemptions (b)(7)(C) and (b)(7)(D) on five of the seven pages. A copy of the DEA letter to USMS dated March 1, 2006, is attached as Exhibit Q.

24. By letter dated March 1, 2006, DEA released portions of one (1) page to the plaintiff. Information was withheld pursuant to FOIA exemptions (b)(2) and (b)(7)(C) and section (j)(2) of the Privacy Act. DEA informed the plaintiff that the remaining seven (7) pages referred had been

[3] The DEA practice is to treat another agency's records that contain information provided by DEA as a "consultation." DEA records that are contained in the files of another agency and forwarded to DEA for review under the FOI/PA are treated as a "referral" for the purpose of responding directly the requester.

referred to another agency, and the agency would respond to him. A copy of the DEA letter

dated March 1, 2006, is attached as Exhibit R.

## ADEQUACY OF SEARCH[4]

### DEA FOIA Request No. 04-1519-P and 05-1295-P

25. The plaintiff's requests assigned DEA FOIA Request No. 04-1519 and 05-1295 were

interpreted as requests for criminal investigative information. All criminal investigative

information about the plaintiff maintained by DEA was reasonably likely to be found in the DEA

Investigative Reporting and Filing System (IRFS), JUSTICE/DEA-008. No other system of

records maintained by DEA was reasonably likely to contain investigative information about the

plaintiff.

26. IRFS is a DEA Privacy Act System of Records that contains <u>all</u> administrative, general and

investigative files compiled by DEA for law enforcement purposes. Therefore, no other records

system within DEA is reasonably likely to contain investigation information responsive to the

plaintiff's request.

27. The DEA Narcotics and Dangerous Drugs Information System (NADDIS) is the index to

and the practical means by which DEA retrieves investigative reports and information from

IRFS. As an index, NADDIS points to investigative files and particular DEA Reports of

Investigation (ROI), DEA Form-6 or other documents, that contain information regarding a

---

[4] DEA conducted searches for only direct requests received from the requester. With regard to DEA FOIA Request No. 06-0114-P and 06-0375-P, no search was conducted, since they were referrals and/or consultations.

particular individual or subject of an investigation. Individuals are indexed and identified in NADDIS by their name, Social Security Number, and/or date of birth.

28. In response to the plaintiff's request assigned DEA FOIA Request No. 04-1519, a NADDIS query was conducted by SARO, on July 21, 2004. The search was conducted by a SARO pre-processor, who used the plaintiff's name, Social Security Number, and date of birth. As a result of the NADDIS query, a single investigative file was identified and retrieved. A search of the file resulted in locating 41 pages of responsive material.

29. In response to the plaintiff's request assigned DEA FOIA Request No. 05-1295, a NADDIS query was conducted on August 26, 2005. No additions to the investigative case file in which the plaintiff was mentioned were observed.

30. During the course of the litigation review, the results of the NADDIS queries conducted by SARO on August 26, 2005, in response to the plaintiff's request assigned DEA FOIA Request No. 05-1295, were compared with the results of the query conducted on July 21, 2004, in response to the plaintiff's request assigned DEA FOIA Request No. 04-1519. The comparison revealed that an additional DEA Report of Investigation, consisting of two (2) pages, prepared on February 22, 2004, existed at the time the search was conducted in response to DEA FOIA Request No. 05-1295. Thus, a total of 43 pages of responsive materials were identified by DEA.

31. The investigative report was obtained and processed. By letter dated September 28, 2006, DEA released portions of two (2) pages to the plaintiff. Information was withheld pursuant to PA Exemption (j)(2) and FOIA Exemptions (b)(2), (b)(7)(C) and (b)(7)(F). A copy of the DEA letter dated September 28, 2006, is attached as Exhibit S.

-8-

32. In his FOIA request dated July 14, 2004, the plaintiff requested "1) any and all DEA Forms

6, inventory lists, related arrest reports, and all information and a list of evidence seized by

several Special Agents and a Deputy U.S. Marshal in regards to his arrest on April 23, 2003, and

(2) any and all information in regard to any "video surveillance seized from the El Dorado Hotel

Security by this agency or any agency" in conjunction with his arrest. DEA released to the

plaintiff nonexempt portions of the ROI, prepared on April 22, 2003, detailing the arrest of the

plaintiff by letter dated August 11, 2004. Included in the release to the plaintiff were the

nonexempt portions of two (2) DEA Form 7a(s), Acquisition of Non-Drug Property and

Regulatory Seizures, which detailed the three (3) non-drug exhibits seized at the time of the

plaintiff's arrest.

33. With regard to the plaintiff's request for video surveillance, I reviewed DEA Investigative

File No. KV-01-0014. I specifically reviewed all the Form-7as associated with DEA

Investigative File No. KV-01-0014, since any non-drug evidence seized or obtained in the course

of an investigation would be memorialized in a DEA Form-7a. There is no record of the

existence of any video surveillance, or the recording of any surveillance by DEA in the case file.

## DESCRIPTION OF RESPONSIVE MATERIAL

34. A total of 54 pages of responsive material were reviewed by DEA. DEA located 43 pages of

materials as a result of searches conducted in response to the direct requests from the plaintiff.

The USMS referred a total of 11 pages to DEA for review and release to the plaintiff. Of the 11

pages referred by USMS, portions of four (4) pages were released to the plaintiff and (7) pages

were returned to USMS for final processing. In total, DEA released portions of 37 pages and withheld 10 in their entirety.

35. The 54 pages of responsive information reviewed by DEA consisted of: 18 DEA ROIs; three (3) USMS Form 11, Report of Investigation; six (6) DEA Personal History Reports; one (1) DEA Defendant Disposition Report; two (2) DEA Acquisition of Non-Drug Property and Regulatory Seizures; one (1) memorandum; one (1) Fugitives Search Results; three (3) USMS e-mails; and three (3) pages of USMS computer printouts.

36. The 43 pages located by DEA and one (1) page referred by USMS were material maintained in DEA investigative case files. DEA investigative case files are established by the office commencing an investigation. The files are titled according to the name of the principal suspect violator or entity known to DEA at the time the file is opened. DEA does not maintain separate dossier investigative case files on every individual or entity that is of investigative interest.

37. Information gathered during the course of a DEA investigation is systematically gathered and included in the investigative case file. This information relates to the file subject and may also include other individuals, such as those who are suspected of engaging in criminal activity in association with the subject of the file.

38. Investigative case files maintained in IRFS contain several records that include, in pertinent part, (1) the DEA Report of Investigation (ROI), DEA Form 6, and continuation page, Form 6a, (2) the DEA Personal History Report, DEA Form 202, (3) the DEA Defendant Disposition Report, and other documents that may serve as a substitute for the forms.

39. The DEA Form 6, and DEA Form 6a, are multi-block forms that comprise the DEA ROI. The forms are used by DEA to memorialize investigative and intelligence activities, and information. The DEA Form 6 is the initial page of the ROI and consists of 15 numbered blocks. Blocks 1 through 10 appear at the top, and Blocks 11 through 15 at the bottom. The middle of the page is the narrative section in which investigative and intelligence information is recorded.

40. The DEA Form 6a is the continuation page of the ROI and consists of six (6) numbered blocks appearing at the top followed by the narrative section, in which investigative and intelligence information is recorded, that extends to the bottom of the page.

41. The DEA Form 6, Block 4, and DEA Form 6a, Block 2, contain a G-DEP identifier. The DEA Form 6, Blocks 5, 9, 12, and 14, contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. The DEA Form 6, Block 6, and DEA Form 6a, Block 3, contain the file title, which is generally the subject of the investigation.

42. The narrative may be broken into several sections which include a "Synopsis," "Details," "Evidence," and/or "Indexing" sections. The "Synopsis" and "Details" sections document events that often contain names of third parties and law enforcement personnel, and information about individuals. The "Evidence" section is used to document and note the collection of evidence and the disposal of items.

43. Ordinarily, the "Indexing Section" appears at the end of the narrative and is used by the preparer of the report to designate those individuals and entities of investigative interest that the agent or intelligence analyst designates to be listed in NADDIS. In addition to the name of an individual, the indexing section may provide identifying details for the indexed individuals or

entity that may include physical descriptions, aliases, social security numbers, various license numbers, addresses, and/or occupations

44. The DEA Personal History Report, DEA Form 202, is a two-page multi-block form used (1) to identify and classify an individual, or update an earlier identification or classification under G-DEP, either prior to or at the time of the arrest, (2) to declare a defendant a fugitive, (3) as part of the establishment of a cooperating individual, and (4) to correct personal data in the NADDIS index.

45. The 6-01 version of the DEA form, utilized in this case, consists of 76 blocks that are completed depending on the circumstances. Block 1 contains the file title, which is generally the subject of the investigation. Block 5 contains a G-DEP identifier; blocks 68, 69, 71, 72, 74, and 75 normally contain the names and/or signatures of DEA Special Agents and other law enforcement personnel. Blocks 8 through 57 contain identifying information about the individual to whom the form pertains. Blocks 42 through 67 contain information related to and explaining the action being taken.

46. DEA Defendant Disposition Report, DEA Form 210, is a multi-block form that is used as the source document for the compilation of DEA defendant statistics, as well as the means by which DEA and the Federal Bureau of Investigation (FBI) track individual cases brought against DEA defendants. A separate DEA Form 210 is prepared for each defendant prosecuted as the result of DEA investigative efforts. The DEA Form consists of 25 blocks of which Block 5 contains the G-DEP identifier; Block 6, the file title; Blocks 7 and 16, the defendant's name; Block 9, the defendant's NADDIS number; Blocks 16-20, personal information and identifiers of

the defendant; and Blocks 24 and 25, the names and signatures of a DEA Special Agent and/or other law enforcement officers.

47. The DEA Form 7a, Acquisition of Non-Drug Property and Regulatory Seizures is used to report any non-drug property acquired. DEA uses the DEA-Form 7a to log or maintain a record of the non-drug property. The form consists of 31 blocks of which Block 4 contains the G-DEP identifier; Block 5, the file title; and Blocks 13 -18, 20, 21, 28 and 30, the names and signature of a DEA Special Agent or other law enforcement officer.

48. The exemptions utilized by DEA to withhold material were the Privacy Act, 5 U.S.C. § 552a, Exemption (j)(2), and the Freedom of Information Act, 5 U.S.C. § 552, Exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). A detailed discussion of the basis and justification for invoking the Privacy Act and Freedom of Information Act Exemptions for all of the redacted material, are set forth below and a *Vaughn* index detailing the DEA withholdings was prepared, and it is attached as Exhibit T.

## JUSTIFICATION FOR WITHHOLDINGS

### Privacy Act Exemption (j)(2)

49. The information responsive to plaintiff's requests that were reviewed by DEA is criminal investigatory data compiled for law enforcement purposes. The information was collected pursuant to DEA's law enforcement responsibility which is the enforcement of the Federal drug laws including the Drug Abuse Prevention and Control Act of 1970, 21 U.S.C. §801 *et seq.*, and placed into DEA investigative case files that are maintained in IRFS.

-13-

50. As a Privacy Act System of Records, the Attorney General promulgated rules, in accordance with the Act, exempting IRFS from the access provisions, pursuant to 5 U.S.C. § 552a(j)(2). *See* 28 C.F.R. § 16.98 (2005). The system was last reported at 66 Fed. Reg. 8425 and last published in its entirety at 61 Fed. Reg. 54219.

51. In accordance with the Privacy Act, 5 U.S.C. §552a(b), the conditions of disclosure are, in pertinent part, (1) pursuant to a written request by, or with the prior written consent of the individual about whom the records pertain, (2) unless disclosure of the record would be required under the Freedom of Information Act, 5 U.S.C. § 552, or pursuant to (3) a routine use or (4) an order of a court of competent jurisdiction.

52. No routine use exists for release of information to the plaintiff; no court order was received by DEA directing the release of records to the plaintiff; and, no third-party release authorization was provided. Therefore, except information that pertains to the plaintiff, DEA withheld information, unless release was required by the FOIA.

## FOIA Exemption (b)(2) - Internal Personnel Practices and Procedures

53. The FOIA, 5 U.S.C. § 552 (b)(2), exempts from disclosure information relating to the internal rules and practices of any agency.

54. Pursuant to DEA rules and practices as indicated in the DEA Agents Manual, many of the pages in this case contain "violator identifiers" consisting of G-DEP (Geographical Drug Enforcement Program) codes, and NADDIS numbers. The G-DEP, NADDIS, and confidential informant numbers are part of DEA's internal system of identifying information and individuals.

-14-

(a)  G-DEP codes are assigned to all DEA cases at the time the case file is opened and indicate the classification of the violator, the types and amount of suspected drugs involved, the priority of the investigation and the suspected location and scope of criminal activity.

(b)NADDIS numbers are multi-digit numbers assigned to drug violators and suspected drug violators known to DEA and entities that are of investigative interest.  Each number is unique and is assigned to only one violator within the DEA NADDIS indices.  Thus, Exemption (b)(7)(C) and (b)(7)(F) were used in conjunction with (b)(2) to withhold third-party NADDIS numbers.

55.  The release of the G-DEP codes would help identify priority given to narcotic investigations, types of criminal activities involved, and violator ratings.  Suspects could decode this information and change their pattern of drug trafficking in an effort to respond to what they determined DEA knows about them or avoid detection and apprehension and create alibis for suspected activities. Disclosure of the codes would, therefore, thwart the Drug Enforcement Administration's investigative and law enforcement efforts.  All G-DEP codes found in the responsive pages are withheld

56.  NADDIS numbers and informant identifier codes are unique and personal to the individual to whom the number applies.  They are assigned by DEA for internal use and there is no public interest in the release of these codes.

57.  DEA also withheld internal computer terminal numbers and telephone numbers, pursuant to exemption (b)(2).  These numbers are purely internal to DEA and in which the public has no

interest. The release of telephone numbers would subject DEA offices to harassing and needless

interrupting telephone calls. Such calls would interfere with the conduct of DEA business.

58. The internal computer terminal numbers are assigned to computers for auditing the use of

computers, and for access to the computer assigned for the purpose of maintenance and updating

computer applications and programs. Release of these numbers would interfere with information

technology systems security by assisting a computer hacker in cloning or imitating a work station.

Similarly, releasing the numbers themselves would provide information in how the numbers are

constructed and assignments are made. This information would assist in allowing individuals to

circumvent information technology security measures.

## FOIA Exemption (b)(7) - Law Enforcement Information

### Exemption (b)(7) Threshold

59. DEA's investigative jurisdiction derives from the Comprehensive Drug Abuse Prevention and

Control Act of 1970, 21 U.S.C. § 801, *et seq*. (hereinafter, the Act) which authorizes DEA to

enforce the Act through the investigation of incidences involving the trafficking in controlled

substances, dangerous drugs and precursor chemicals and the violators who operate at interstate

and international levels; seize and forfeit assets derived from, traceable to, or intended to be used

for illicit drug trafficking, cooperate with counterpart agencies abroad and to exchange

information in support of drug traffic prevention and control.

60. Any records deemed responsive to the plaintiff's FOIA request would be criminal

investigative records.

## FOIA Exemption (b)(7)(C) - Invasion of Privacy

61. The FOIA, 5 U.S.C. § 552 (b)(7)(C), sets forth an exemption for records or information compiled for law enforcement purposes the disclosure of which could reasonably be expected to constitute an unwarranted invasion of personal privacy.

62. In making the determination to withhold this information, the individuals' privacy interests are balanced against any discernible public interest in disclosure of the individuals' identities. The public interest in disclosure of the information is determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and Controlled Substance Act statutes, and/or how DEA conducts its internal operations and investigations.

63. In this instance, the plaintiff provided no facts to show any public interest or any potential public interest which would outweigh the privacy interests of the individuals. Thus, disclosure of any identities would be an unwarranted invasion of their personal privacy.

64. In asserting this exemption, each piece of information was examined to determine the degree and nature of the privacy interest of any individual whose name and/or identifying data appeared in the documents at issue. The public interest in disclosure of the information was determined by whether the information in question would inform the plaintiff or the general public about DEA's performance of its mission to enforce Federal criminal statutes and the Controlled Substance Act, and/or how DEA conducts its internal operations and investigations. In this case, it was determined that there was no legitimate public interest in the information withheld under

-17-

exemption (b)(7)C), and release of any information about a third party would constitute an unwarranted invasion of that third party's personal privacy.

65. The identities of DEA Special Agents, DEA laboratory personnel, and other Federal, state/local law enforcement officers were withheld. Releasing their identities and information pertaining to these individuals would place the Special Agents, and other law enforcement officers and personnel in a position that they may suffer undue invasions of privacy, harassment and humiliation from disclosure of their identities in the context of a criminal law enforcement investigatory file.

66. The Special Agents and other law enforcement officers and personnel were assigned to handle tasks relating to the official investigation into the criminal activities of the plaintiff and other individuals. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. There is no public interest to be served by releasing the identities of these individuals.

67. Government employees were assigned to handle tasks relating to the official investigations into the criminal activities of the plaintiff. They were, and possibly still are, in positions of access to information regarding official law enforcement investigations. If their identities are released, they could become targets of harassing inquiries for unauthorized access to information pertaining to ongoing and closed investigations. Also, release of their identities would constitute an

-18-

unwarranted invasion of their personal privacy. There is no public interest to be served by releasing the identities of government employees.

### FOIA Exemption (b)(7)(D) - Confidential Sources and Information Obtained from Confidential Sources

68. The FOIA, 5 U.S.C. § 552 (b)(7)(D), sets forth an exemption for the information compiled for law enforcement purposes the disclosure of which could reasonably be expected to reveal the identity of a confidential source and/or information furnished by a confidential source. Exemption (b)(7)(D) was employed to withhold certain reports in part, and others in their entirety, that contained information that would disclose the identity of and the information provided by the source.

69. Sources of information include those to whom express confidentiality was granted and those about whom, based upon the facts and circumstances, confidentiality could be implied. Each document or group of related pages that contain material provided by individual(s), other than a DEA agent, was examined in light of exemption (b)(7)(D) to determine whether confidentiality was express or implied.

70. As an agency charged with law enforcement authority, DEA relied on the (b)(7)(D) exemption to protect source-identifying and source-supplied investigative information. The information at issue here pertains to coded confidential informants with express assurances of confidentiality. Because of the nature of DEA's criminal investigations, any information that

could identify these informants, including the informant identifier codes, could subject them to

serious harm, substantial repercussions, and possibly even death.

## Express Confidentiality - Coded Informants

71. Coded informants are individuals who have a continuing cooperative association, by written

signed agreement, with DEA.  Such cooperative arrangements are established and maintained

according to DEA policy and procedure.  These individuals are expressly assured confidentiality

in their identities and the information they provide to DEA.  They are also assured that their

names will not be used in DEA investigative materials.  They are assigned an identification code

which is used in place of their name or referred to as CI, SOI, or CS.

## FOIA Exemption (b)(7)(F) - Safety of Law Enforcement Personnel and Other Individuals

72.  The names of  DEA Special Agents,  Supervisory Special Agents, United States Customs

Service (USCS) , other Federal law enforcement personnel, a state/local law enforcement officer,

and confidential sources of information,  were withheld in accordance with 5 U.S.C. § 552

(b)(7)(F).  Exemption (b)(7)(F) sets forth an exemption for records or information compiled for

law enforcement purposes the disclosure of which could reasonably be expected to endanger the

life or physical safety of an individual.

73.  DEA Special Agents and Supervisory Special Agents, as well as members of other law

enforcement entities, are frequently called upon to conduct a wide variety of investigations,

including sensitive and dangerous undercover operations.

74.  Special Agents routinely approach and associate with violators in a covert capacity.  Many of those violators are armed and many have known violent tendencies.  It has been the experience of DEA that the release of Special Agents' identities has, in the past, resulted in several instances of physical attacks, threats, harassment and attempted murder of undercover and other DEA Special Agents.  It may, therefore, be reasonably anticipated that other law enforcement officers would become targets of similar abuse if they were identified as participants in DEA's enforcement operations.

75.  In addition, if the names of Special Agents and other law enforcement officers were released pursuant to the Freedom of Information Act, DEA would be releasing this data to the public realm.  DEA considers it to be within the public interest not to disclose the identity of Special Agents so that they may effectively pursue their undercover and investigatory assignments.  These assignments are a necessary element in support of DEA's objective -- the suppression of the illicit traffic of narcotic and dangerous drugs.  Public disclosure of the identities of investigatory and other personnel, as well as confidential sources of information,  would have a detrimental effect on the successful operation of DEA,  as well as risk harassment and danger to its agents other law enforcement personnel, and confidential sources of information.  This information was also withheld pursuant to Exemption (b)(7)(C).

## SEGREGABILITY

76.  All of the responsive information was examined to determine whether any reasonably segregable information could be released.  Pages were withheld in their entirety where, based

-21-

upon the review, the release of any additional information would (1) result in the disclosure of no useful information, or incomprehensible words and/or phrases that would not shed any light on how the Government conducts business, (2) could result in compromising the identity of and information provided by sources of information who were granted express confidentiality or, because of the circumstance, implied confidentiality was applicable, (3) would be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation, and/or (4) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in the investigative reports, and DEA agents and other law enforcement personnel.

77. Reasonably segregable also involved consideration of the time and effort that would be expended to exclude or include information in a record or document being processed. The current redaction process employed by DEA entails the use of translucent red cellophane tape. After the tape is applied, the document is copied and the information intended to be withheld is blackened in the copying process.

78. Once tape is applied, it generally cannot be removed. The tape lifts the print from the paper, if removal is attempted or if it inadvertently touches print not intended to be withheld. The page must then be recopied and the process begun again. The process of applying a thin strip of tape is tedious, cumbersome and time consuming; however, it is the most effective and efficient means currently available to DEA to withhold information based upon the manner and methods in which DEA records information and maintains its records. Consequently, the importance of releasing a particular word, when an error occurs, is balanced against the cost of redoing an entire page.

79. In making the determination to redo a page or pages, consideration is given as to whether the information which could be released will add any value in disclosing or shedding light on how the Government conducts business. Thus, although an additional word could be released, or the same word is withheld in one instance and not in another, a balance is struck between the cost of re-processing the entire page and the value of the word or phrase that could be released.

80. Pages "4" and "5", "6" and "7", and "8" and "9" comprise three (3) Personal History Reports, DEA Form 202, of three (3) third-parties. The pages are withheld in their entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), and, (b)(7)(F). The reports contain identifying and investigative information about the third-parties. The plaintiff's name is mentioned only as a criminal associate of the third-party about whom the record pertains. After redacting all withholdable information, no useful information would remain, except for the plaintiff's name on the first page of the reports.

81. Page "26" is the second page of a two-page ROI containing information provided by a confidential source regarding the plaintiff and a third-party. The page was withheld in its entirety pursuant to FOIA exemptions (b)(2), (b)(7)(C), (b)(7)(D), and (b)(7)(F). The information about the plaintiff is inextricably intertwined with information about the third party. After redacting all withholdable information, no useful information would remain, except for the plaintiff's name in the indexing section. Thus, the page was withheld in its entirety

82. Pages "35", "37" and "39" are the second page of three (3) two-page ROIs regarding the pleas of three (3) third-parties and is the continuation of the indexing section of the reports. The pages

are withheld in their entirety pursuant to FOIA exemptions (b)(2) and (b)(7)(C). The plaintiff's name is not mentioned on the pages. After redacting the withholdable information, no useful information would remain. Thus, the page was withheld in its entirety.

83. The subject of this declaration and the statements set forth herein are true and correct either on the basis of my personal knowledge or on the basis of information acquired by me through the performance of my official duties.

I declare under the penalty of perjury that the foregoing is true and correct.

October 3, 2006
Date

Leila I. Wassom
Leila I. Wassom
Paralegal Specialist
Office of Chief Counsel
Drug Enforcement Administration
Washington, D.C.  20537

-24-